IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

PEARL L. JOHNSON                                                                                          PLAINTIFF

VS.                                                                   CIVIL ACTION NO 3:07CV621 DPJ-JCS

DR. EARL WATKINS, IN HIS CAPACITY AS
SUPERINTENDENT OF JACKSON PUBLIC SCHOOLS
DISTRICT AND
TONY WINTERS IN HIS OFFICIAL
CAPACITY AND INDIVIDUAL CAPACITY                                            DEFENDANTS

**ORDER**

This employment dispute is before the Court on Defendants Earl Watkins and Tony Winters' motion to dismiss [24], motion to exclude witnesses [38], and motion for summary judgment [44]. The Court, having fully considered the parties' submissions and the applicable authorities, finds as follows.

**I.      Facts / Procedural History**

Plaintiff Pearl Johnson alleges that she was subject to sexual harassment and retaliation during her brief tenure at Rowan Middle School, which is part of the Jackson Public School District. Plaintiff began working as a literacy coach at the school in August 2006. Prior to that, she had worked at elementary schools and had no prior work experience as a literacy coach. Plaintiff's initial supervisor at the school was Tony Winters. Plaintiff claims Winters subjected her to unwelcomed sexual harassment.

Plaintiff's Complaint, filed *pro se*, provides no factual allegations and no hint as to the nature of the alleged harassment. Her response to Defendants' motion for summary judgment is only slightly less vague, asserting first, without citation to supporting record evidence, that Winters engaged in "unwanted and unwelcome" advances. Plaintiff's Memorandum [59] at 1-2.

She later generically asserts that she suffered "constant and ongoing verbal attacks" and that Winters told her that "if she continued to treat him a certain way, that he did not know what would happen to her at the end of the year." *Id*. at 4. Plaintiff's response offers no citation for this averment, but she did testify during her deposition that she attended what she perceived to be an "evaluation conference," during which Winters said she was not treating him in a professional manner and that if she persisted, he did not know what would happen at the end of the year. Plaintiff's Depo. Vol. II at 75. The record does not indicate when this conversation took place or in what way her conduct was supposedly unprofessional.

Plaintiff also alleges physical contact. On this issue, her response provides allegations that are more specific, claiming that Winters "grabbed her hand on one occasion, and on another occasion that he pulled her body to his body and that he struck her during a professional training session." *Id*. at 5. Plaintiff again fails to cite to the record for these assertions, and review of the record tells a different story. According to Plaintiff's testimony, the first two instances of physical contact actually occurred during the same encounter, not on separate occasions. Plaintiff's Depo. Vol. I at 132, Vol. IV at 8. According to her, Winters first grabbed her hand and then put his arm around her shoulder, causing the left side of her body and head to touch his. *Id*. As for the claim that Winters "struck her," the testimony is that he struck her hand. Plaintiff's Depo. Vol. IV at 11-12. Beyond that, things get sketchy, and when asked to describe the incident, Plaintiff stated, "I mean hitting me, striking when somebody hits you when they're talking to you." Plaintiff's Depo. Vol. II at 66. There is no indication as to the severity or number of strikes. Finally, Plaintiff confirmed that these two instances were the only times Winters made physical contact with her. *Id*. at 73. There is no allegation that Winters ever

attempted to touch any of Plaintiff's private body parts.

Although Plaintiff's response fails to identify any other specific instances of harassment by Mr. Winters, the only claimed harasser, Defendants' memorandum nevertheless addresses other instances about which Plaintiff testified. Those occurrences include the following: 1) an instance during which Winter was shown a picture of Plaintiff's daughter and remarked that she was beautiful just like Plaintiff; 2) the making of "O-O-O-H" or moaning sounds in her presence; 3) the comment that "when you speak your words just go all through me"; 4) the comment that she knew how to wear a suit; 5) and rubbing his tie in what Plaintiff deemed to be an offensive manner; and 6) looking at her breasts.[1]

Although Plaintiff claims that the inappropriate conduct began in August 2006, she did not complain to anyone at the school until December of that year. Even then, she did not file a complaint under the school's sexual harassment policy, electing instead to handle the matter herself. Plaintiff's Depo. Vol. I at 152-53. Two months later, she finally filed a formal complaint. There is no dispute that the school immediately removed Plaintiff from Winter's supervision and initiated an investigation. While the parties dispute the extent of the investigation, they agree that the school found no harassment and decided to transfer Plaintiff to a nearby elementary school. Defendant claims Plaintiff requested the transfer, and Plaintiff at least confirmed in her testimony that she had inquired about being transferred. *Id*. at 153. The parties dispute whether Plaintiff consented to the transfer. Following the transfer, Plaintiff held the

---

[1]As stated, Plaintiff did not mention these incidents in her response, and it is impossible to tell which, if any, she claims are legally relevant. Conclusory allegations are not sufficient to avoid summary judgment. *See* Section II(A) *infra*. Nevertheless, the Court will consider the legal issues based on the record as presented by Defendants.

3

same title and received the same salary and benefits.

Aggrieved by the school's response, Plaintiff exhausted her administrative remedies and filed a *pro se* complaint against Tony Winters and Earl Watkins, the Superintendent of Jackson Public Schools District. Although the Complaint fails to identify specific causes of action, Plaintiff apparently seeks recovery under Title VII of the Civil Rights Act of 1964 for alleged sexual harassment and retaliation. After filing suit, Plaintiff retained an attorney but largely failed to prosecute her suit due to claimed medical and mental disabilities. As a result, she has never responded to written discovery nor provided prediscovery disclosures, despite being ordered to do so and despite the expiration of a twice-continued discovery period. Defendants have moved for summary judgment and have further sought discovery related sanctions.

**II.    Analysis**

    A.    Motion for Summary Judgment

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine

4

issue for trial." *Id*. at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000).

Significant to the present motion, "[t]he nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Fuentes v. Postmaster Gen. of USPS*, 282 F. App'x 296, 300 (5th Cir. 2008) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). Here, Plaintiff's response attaches excerpts from two depositions, but she generally fails to specify those portions of the record that support her positions. Instead, the response offers speculative and conclusory arguments from counsel, many of which find no support in the record evidence reviewed by the Court.[2]

---

[2]Despite Plaintiff's insufficient response, the Court read all exhibits and endeavored to consider the record as a whole. To the extent the Court may have missed supporting record evidence that was not cited in Plaintiff's response, the Court was "under no duty 'to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Id*. (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir. 1992)).

### 1. Claim Against Tony Winters

Defendants seek the dismissal of Tony Winters because he is not a statutory employer. *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (holding that Title VII does not impose individual liability). Plaintiff does not contest this issue which is otherwise well taken. The claims against Tony Winters are dismissed with prejudice.

### 2. Sexual Harassment

#### a. *Quid Pro Quo*

Plaintiff claims quid pro quo sexual harassment at the hands of her supervisor Tony Winters. To state a prima facie case of quid pro quo harassment, Plaintiff must show that "(1) she suffered a tangible employment action and (2) the tangible employment action resulted from her acceptance or rejection of her supervisor's alleged sexual advances." *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 481 (5th Cir. 2002) (citing *Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000)).

The first element of the prima facie case is the first stop on the "road map" outlined by the Fifth Circuit for analyzing sexual harassment claims. *See Casiano*, 213 F.3d at 283 (adopting analytical approach based on *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)). According to the United States Supreme Court, a tangible employment action is "a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus.*, 524 U.S. at 761; *see also Williams v. Barnhill's Buffet Inc.*, 290 F. App'x 759, 761-62 (5th Cir. 2008) (applying *Ellerth* definition of "tangible employment action"); *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 201

(5th Cir. 2007) (same).

In this case, Plaintiff claims that she "was reassign [sic] to a job with significantly different responsibilities." Plaintiff's Memorandum [59] at 3. However, she cites no record evidence for this assertion. Rather, the record evidence demonstrates that Plaintiff had only worked as a literacy coach on the middle school level for one year. After the transfer, she was still a literacy coach making the same salary with the same benefits. Such a transfer is insufficient as a matter of law. *See Watts v. Kroger Co.*, 170 F.3d 505, 510 (5th Cir. 1999) (holding that employee does not suffer tangible employment action when supervisor "change[s] her work schedule and ask[s] her to perform tasks which she had not previously been asked to perform"); *Barnhill's Buffet*, 290 F. App'x at 761-62 (holding that retaliation against restaurant employee consisting of reassignment to "bad sections" and requiring her to wash wall where servers dumped food did not amount to tangible employment action).

Plaintiff's quid quo pro claim also fails to satisfy the second prong of the prima facie case because she has failed to offer any record evidence that a "tangible employment action resulted from her acceptance or rejection of her supervisor's alleged sexual advances." *La Day*, 302 F.3d at 481 (citing *Casiano*, 213 F.3d at 283). "[I]n order to survive summary judgment, [Johnson] must demonstrate a genuine issue of material fact regarding whether [Winters], her alleged harasser, took a tangible employment action against her because she rejected [Winter's] sexual advances." *Russell*, 234 F. App'x at 201 (citing *Casiano*, 213 F.3d at 284-85) (finding no tangible employment action when an employee was denied access to a training program because another manager, not the harassing supervisor, was responsible for the decision); *see also Faragher*, 524 U.S. at 807; *Durkin v. City of Chi.*, 341 F.3d 606, 611 (7th Cir. 2003) ("When a

7

supervisor engages in sexual harassment, the employer is liable for the harassment only if the harasser took a tangible employment action as part of his harassment.").

Even if Plaintiff could show that Winters took a tangible employment action against her, there is nothing in the record suggesting that he actually made any "sexual advances," the rejection of which led to a retaliatory action. *La Day*, 302 F.3d at 481. Although Plaintiff did not like Winters' behavior, her response fails to direct the Court to any conduct that can be construed as a sexual advance. Moreover, Plaintiff was repeatedly asked during her deposition, "What has Mr. Winters asked you to do of a sexual nature that you refused to do?" Plaintiff's Depo. Vol. II at 107. She could not answer the question and ultimately stated, "I cannot specifically tell you at this time." *Id*. at 109. Accordingly, Plaintiff cannot state a prima facie case of quid pro quo sexual harassment and must rely on her claim of hostile work environment.[3]

        b.     *Hostile Work Environment*

Because there was no quid pro quo, Plaintiff must rely on her claim of hostile work environment.

> To establish a hostile work environment claim, [a plaintiff] must demonstrate that: (1) she is a member of a protected group; (2) she was the victim of uninvited . . . harassment; (3) the harassment was based on [a protected characteristic]; (4) the

---

[3]Even if a prima facie case of quid pro quo harassment existed, Defendant has argued that it would not be timely. Unlike hostile work environment claims, quid pro quo harassment must occur within the 180 day window prior to Plaintiff's EEOC charge of administration. *See Williams v. Barnhill's Buffet, Inc.*, No. 2:06-cv-148-KS-MTP, 2008 WL 111292, at *3 (S.D. Miss. Jan. 8, 2008) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 US 101 (2002)). Plaintiff's response fails to address this argument other than to argue that the Lilly Ledbetter Fair Pay Act, preserves her quid pro quo claim. As the title indicates, the Act relates to discrimination in compensation. Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5. Plaintiff's compensation was not affected, and the Act has no application. Plaintiff has therefore failed to "identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Fuentes*, 282 F. App'x at 300.

harassment affected a "term or condition or privilege" of [plaintiff's] employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action.

*Harvill v. Westward Commc'ns*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 289 (5th Cir. 2001)). In this case, Plaintiff was a member of a protected group. Although Defendants claim that Plaintiff's prima facie case is otherwise lacking, they fail to specifically address elements two and three, so the Court will assume without deciding that a question of fact exists as to those elements.

The fourth element is where Plaintiff's claim fails, because she has not demonstrated that the "harassment affected a 'term or condition or privilege' of [her] employment." *Harvill,* 433 F.3d at 434. For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations omitted). "The environment must be deemed 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Lauderdale v. Tex. Dept. of Criminal Justice, Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (citations omitted).

In the instant case, the Court does not doubt that Plaintiff found the environment hostile, but viewed from the objective standard, it was not.

> In determining whether an environment is hostile or abusive, the court must look to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; . . . whether it unreasonably interferes with an employee's work performance[;] and whether the complained of conduct undermined the plaintiff's workplace competence.

*Lauderdale*, 512 F.3d at 163 (internal quotations and citations omitted). "Title VII . . . is not a general civility code, and simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Harvill*, 433 F.3d at 434 (internal quotations and citation omitted).

As a starting point, the relatively benign comments and minor physical contact Plaintiff described were not severe. The two times Winters apparently touched Plaintiff did not involve any of her private body parts and cannot be viewed as overtly sexual in nature. So too, none of the comments were overtly sexual or abusive. Finally, Plaintiff mentions that Winters told her he did not know what would happen to her at the end of the year if she did not act professionally toward him. The record fails to reflect when the comment was made and therefore whether it was retaliatory. Moreover, this one comment fails to rise to a sufficient level of severity. *See Barnett v. Boeing Co.* 306 F. App'x 875, 879 (5th Cir. 2009) (holding as a matter of law that conduct, including intimidation after plaintiff's complaint, was not sufficiently severe or pervasive).

As for pervasiveness, Plaintiff has left this portion of the record largely undeveloped. During her deposition, she was repeatedly asked for specific examples of alleged harassment and provided the instances recited above. These instances, spread over a six or seven month period, would not be sufficiently pervasive to overcome the significant lack of severity. *See Lauderdale*, 512 F.3d at 163 (noting that "the test-whether the harassment is severe or pervasive-is stated in the disjunctive").

Also absent from Plaintiff's record is any indication that her work performance or competence were compromised. *See Garza v. Laredo Indep. Sch. Dist.*, 309 F. App'x 806, 810

(5th Cir. 2009) (affirming summary judgment because, *inter alia*, plaintiff offered no evidence that the harassment interfered with his work performance). Instead, Plaintiff offers largely generic and conclusory allegations that the conduct was sufficiently severe or pervasive. *See TIG Ins. Co.*, 276 F.3d at 759 (holding that conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial).

When compared to other cases reviewed by the Fifth Circuit Court of Appeals, it is clear that Plaintiff's allegations fall well short of the mark. *Compare McKinnis v. Crescent Guardian, Inc.*, 189 F. App'x 307, 310 (5th Cir. 2006) (holding that chronic unwanted touching, including touching on the breasts and thighs over a year-long period, repeated demands for "hugs and kisses," and other inappropriate behavior resulting in plaintiff's resignation, supported a hostile work environment claim); and *Harvill*, 433 F.3d at 435-36 (finding jury question where supervisor allegedly grabbed and kissed plaintiff on cheek, popped rubber bands at her breasts, repeatedly fondled her breasts and patted her on her buttocks, rubbed his body against hers from behind, and questioned her about her sex life and abilities in bed), *with Barnett,* 306 F. App'x at 879 (holding as a matter of law that conduct was not sufficiently severe or pervasive despite allegation that supervisor "leered" at plaintiff, "touched her in sexually inappropriate and unwelcome ways, and . . . actively intimidated her after she complained of his actions"); *Gibson v. Potter*, 264 F. App'x 397, 398 (5th Cir. 2008) (holding that conduct of supervisor who "grabbed [plaintiff] on the buttocks" and allegedly engaged in "series of events" including "'sex talk,' asking for dates, and offering his telephone number" was not "sufficiently severe or pervasive to alter a term or condition of [plaintiff's] employment"); *Hockman v. Westward*

*Commc'ns*, 407 F.3d 317, 329 (5th Cir. 2004) (affirming summary judgment despite allegation that supervisor remarked about another employee's body, slapped plaintiff's behind with a newspaper, "grabbed or brushed" against plaintiff's breasts and behind as many as six times, held plaintiff's cheeks and tried to kiss her, asked plaintiff to come to the office early so that they could be alone, and stood in the door of the bathroom while she was washing her hands); *Derouen v. Carquest Auto Parts, Inc.*, 275 F.3d 42 (5th Cir. 2001) (holding that plaintiff's allegations that co-worker attempted to grab her breast and later touched and rubbed her thigh, that customers made sexually threatening remarks, and that supervisors did not respond to her complaints about these incidents, did not support a hostile work environment claim); *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 873 (5th Cir. 1999) (affirming summary judgment where harassment included supervisor's remark to plaintiff that her "elbows [were] the same color as [her] nipples," commenting on the size of her thighs while pretending to look under her desk, and attempting to look down plaintiff's clothing).[4] [5]

### 3. Retaliation

The final count of Plaintiff's Complaint states that she was retaliated against for "engag[ing] in protected activity." Complaint ¶¶ 10-16. Title VII protects employees from unlawful retaliation. To state a prima facie case of retaliation, a plaintiff must prove that (1) the

---

[4] The Court questions whether conduct as alleged in *Hockman* would still fail to satisfy the test. *See Harvill*, 433 F.3d at 435 (distinguishing *Hockman*). Nevertheless, the Fifth Circuit continues to cite *Hockman* and *Shepard* as examples of insufficiently severe or pervasive behavior. *See Paul v. Northrop Grumman Ship Sys.*, 309 F. App'x 825, (5th Cir. 2009); *Barnett*, 306 F. App'x at 879.

[5] Having found no prima facia case, the Court need not address Defendants' *Ellerth/Faragher* defense, although it appears valid.

plaintiff engaged in protected activity; (2) was subjected to an adverse employment action; and (3) there was some causal link between the protected activity and the adverse action. *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002) (citations omitted).

In this case, Defendants' motion appears to lump the alleged retaliation into the sexual harassment claim. It is clear, however, that the Complaint sufficiently pleads a claim for retaliation under the Title VII framework. Accordingly, this portion of Plaintiff's claim survives Defendants' motion.

B.      Motion to Dismiss [24] and Motion to Strike Witnesses [38]

There is no dispute that Plaintiff failed to fully participate in discovery. She never produced prediscovery disclosures and never responded to Defendants' written discovery. The failure comes despite extensions of the discovery deadline and an order granting Defendants' motion to compel. *See* Order [17]. However, Plaintiff claims that her failure to comply with the Court's order and the applicable deadlines resulted from her fragile medical/mental state for which she has been in treatment.

Rule 37(b)(2)(c) of the Federal Rules of Civil Procedure provides that if a party fails to obey a court order to provide or permit discovery, the court may impose the sanction of "dismissing the action or proceeding in whole or in part." In addition, federal courts are vested with inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962). "[T]his includes the power to dismiss a case . . . as a sanction for a party's failure to obey court orders." *In re United Markets Intern., Inc.*, 24 F.3d 650, 654 (5th Cir. 1994).

Although the trial court has discretion to impose the ultimate sanction of dismissal for violation of discovery orders, it must consider the following:

> First, the penalized party's discovery violation must be willful. Also, the drastic measure is only to be employed where a lesser sanction would not substantially achieve the desired deterrent effect. The reviewing court may also consider whether the discovery violation prejudiced the opposing party's preparation for trial, and whether the client was blameless in the violation.

*United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003). The present case presents an insufficient basis to find a willful violation, and the Court concludes that dismissal would not be appropriate. A lesser sanction regarding the undisclosed witnesses may be appropriate, but it is impossible for the Court to determine the extent to which the late disclosures prejudices Defendants' case with respect to the only remaining claim. Accordingly, the Court will withhold ruling on the motion to strike and take that matter up at the pretrial conference.

### III. Conclusion

Accordingly, it is hereby ordered that Defendants' motion to dismiss [24] is denied; Defendants' motion to exclude witnesses [38] is held in abeyance; and Defendants' motion for summary judgment [44] is granted in part and denied in part. Finally, having fully considered the status of the present case, it appears that a settlement conference before Magistrate Judge James Sumner would be appropriate. Accordingly, the parties are instructed to contact Magistrate Judge Sumner to schedule a settlement conference which should take place no later than July 1, 2009.

**SO ORDERED AND ADJUDGED** this the 29th day of May, 2009.

                                                    s/ *Daniel P. Jordan III*
                                                    UNITED STATES DISTRICT JUDGE